Filed 3/18/14  Aviva USA Corp. v. Vazirani CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| AVIVA USA CORPORATION et al., | B246022 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC460433) |
| v. | |
| ANIL VAZIRANI et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle Rosenblatt, Judge.  Affirmed.

Snell & Wilmer, Andrew F. Halaby and Todd E. Lundell for Plaintiffs and Appellants.

Barnes & Thornburg, Stephen R. Mick and Levi W. Heath for Defendants and Respondents.

_____

Plaintiffs and appellants Aviva USA Corporation (Aviva) and Creative Marketing International Corporation (CMIC) appeal from a judgment following orders granting motions for summary adjudication in favor of defendants and respondents Anil Vazirani and his company Vazirani & Associates Financial, LLC (VAF) in this action arising out of unsolicited electronic messages (e-mail). Appellants contend the e-mail sent by respondents violated Business and Professions Code section 17529.5, which prohibits advertising through e-mail with certain deceptive features.[1] We conclude the trial court correctly found the e-mails did not constitute commercial advertisements under section 17529.5. Therefore, we affirm.

## FACTS

Aviva is an insurance provider. It relies on insurance agents to sell its life insurance and annuity policies, which are underwritten by Aviva Life and Annuity Company (ALAC). CMIC provides sales support and marketing services to the agents.

Vazirani is an independent agent. VAF is a marketing organization for insurance companies. Vazirani began selling Aviva's products in 2005. In November 2008, Aviva informed Vazirani that his contract would be terminated as of January 30, 2009.

Vazirani filed lawsuits against several entities, including CMIC. Vazirani's attorney wrote a letter to Aviva in July 2010 stating that Vazirani had hired a public relations firm to publicize the injustices that he had suffered. Vazirani gave Aviva an opportunity to discuss settlement prior to the publicity.

Vazirani retained G. Barry Klein, Inc., doing business as Insurance Marketing (GBK). GBK has lists of e-mail addresses for people working in the insurance industry which it acquired and maintains. GBK sends unsolicited commercial e-mail to these addresses on behalf of clients.

---

[1] All further statutory references are to the Business and Professions Code, unless otherwise stated.

2

At Vazirani's request, GBK sent an e-mail in February 2011 to a distribution list of 500,000 addresses for individuals in the life insurance and annuity industry and another list of 50,000 addresses of stockbrokers with the subject line "A detailed summary making a case against Aviva . . . ." The text of the message stated: "A detailed summary making a case against Aviva . . . http://www.aviva-uncovered.com." Vazirani told GBK he was sending the negative e-mails to pressure Aviva to restore his contract and pay his commissions he believed he was owed. GBK sent an e-mail to the same lists with the same subject line and message on March 2, 2011.

The link in the e-mails led to a website with the headline, "Aviva Uncovered [-] The Sad Truth About Aviva's Business Practices." A profile on the website touted Vazirani's qualifications and stated: "This website is meant to warn the public about the business practices of some of Aviva's top U.S. executives. [Vazirani] has sued Mark Heitz, an executive vice-president in charge of the company's U.S. sales and distribution, and his former deputy Jordan Canfield, accusing them of conspiring to destroy his lucrative book of business so they could steer it to a distribution partner that is owned by some of their fellow fraternity brothers from Washburn University." Vazirani claimed racism played a part in his termination, as he is an immigrant from India. The website contained pages with links, such as a class action lawsuit against Aviva for deceptive marketing to elders, Vazirani's legal proceedings, and a form to submit "your story about Aviva." One of the links appears to be a series of e-mails obtained through litigation proceedings. The e-mails among Heitz, Canfield, and other Aviva employees discussed Vazirani's termination, despite the amount of business he generated for the company, in order to save another company's struggling business. One of the employees noted he had never been comfortable with Vazirani.

On March 10, 2011, GBK sent an e-mail for Vazirani to the distributions lists with the subject line "Updated Summary of the Case Against Aviva." The e-mail stated: "A detailed summary making a case against Aviva . . . http://www.aviva-uncovered.com [¶] For updated information (just changed), click the link for the Newsroom or just go here:

http:///www.aviva-uncovered.com/newsroom/ [¶] **Let's not forget when contracts were cancelled and new business applications sent back**."

On April 1, 2011, GBK sent an e-mail with the subject line "Aviva Implicated in a Ponzi Scheme." The message stated: "For the latest information about Aviva being implicated in a Ponzi scheme, go here: http://www.aviva-uncovered.com/newsroom/ [¶] For a detailed summary making a case against Aviva . . . http://www.aviva-uncovered.com [¶] **Let's not forget when contracts were cancelled and new business applications sent back**."

CMIC received 114 of the e-mails sent by GBK.

Vazirani also retained Rope Marketing Alliance doing business as Agent Recruiting Network (RMA). RMA helps organizations market themselves to agents and financial advisors. RMA refers to the e-mail sent for clients as "advertisements." Vazirani supplied the content of the e-mails. On March 15, 2011, RMA sent an e-mail to approximately 200,000 addresses with the subject line "Aviva Exposed." The message stated: "The Sad Truth . . . Aviva Uncovered [¶] Please visit this link to read more [¶] Be sure to check out The Newsroom for updates."

On March 21, 2011, RMA sent an e-mail to the same addresses with the subject line "Aviva Uncovered" that contained essentially the same message as RMA's previous e-mail. An e-mail sent on March 28, 2011, had the subject line "Aviva Exposed (very Important – Must Read)" and stated: "**The Sad Truth . . . Aviva Uncovered** [¶] Please visit this link to read more [¶] Be sure to check out The Newsroom for updates. Please use this link to forward this info to others."

E-mails sent on March 31 and April 11, 2011, both had the subject line "Aviva Implicated in a Ponzi Scheme." The text of the message stated: "**The Sad Truth . . . Aviva Uncovered    Aviva implicated in a Ponzi scheme.** [¶] Please visit this link to read more [¶] Please use this link to forward this info to others." At least 32 of RMA's e-mails were received by Aviva or CMIC.

4

## PROCEDURAL BACKGROUND

On April 27, 2011, William H. Moneymaker, CMIC, Aviva, and ALAC filed a complaint against Vazirani, VAF, GBK, and RMA. On February 16, 2012, plaintiffs filed an amended complaint against Vazirani and VAF only, alleging several causes of action, including violation of section 17529.5. The complaint alleged that Vazirani and VAF sent unsolicited commercial e-mail advertisements from California that contained falsified, misrepresented, or forged header information or a subject line they knew would likely mislead reasonable recipients about a material fact regarding the subject matter of the message.

Vazirani and VAF filed a motion for summary adjudication of the cause of action for violation of section 17529.5. Plaintiffs filed a motion for summary adjudication of the same cause of action. Vazirani and VAF filed a separate motion for summary adjudication of the remaining causes of action.

A hearing was held on August 24, 2012. The trial court found RMA had consent from its subscribers to receive e-mail from RMA. In addition, the court found the e-mails sent on Vazirani's behalf did not constitute commercial advertisements. Therefore, the court entered orders granting Vazirani and VAF's motions and finding plaintiffs' motion was moot. The court entered judgment in favor of Vazirani and VAF on October 24, 2012. Aviva, ALAC, and CMIC filed a timely notice of appeal from the judgment, but ALAC has not filed a brief on appeal.

## DISCUSSION

### Standard of Review

"'The standard for deciding a summary judgment motion is well-established, as is the standard of review on appeal.' [Citation.] 'A defendant moving for summary judgment has the burden of producing evidence showing that one or more elements of the

plaintiff's cause of action cannot be established, or that there is a complete defense to that cause of action. [Citations.] The burden then shifts to the plaintiff to produce specific facts showing a triable issue as to the cause of action or the defense. [Citations.] . . .' [Citation.]" (*Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal.App.4th 805, 817.) On appeal, we review orders granting summary judgment or summary adjudication de novo. (*Id.* at p. 818 & fn. 3.)

When the issue on appeal requires statutory interpretation, we review questions of law de novo. (*Chatsky & Associates v. Superior Court* (2004) 117 Cal.App.4th 873, 876.)

## Section 17529.5

Aviva and CMIC contend the e-mails sent by Vazirani and VAF were commercial e-mail advertisements within the meaning of section 17529.5. We disagree.

Section 17529.5, subdivision (a), makes it unlawful for any person or entity "to advertise in a commercial e-mail advertisement" sent from California or to a California e-mail address if the e-mail contains certain false or misleading features set forth in the statute.[2]

Section 17529.1, subdivision (c) defines "commercial e-mail advertisement" for the purposes of this section as "any electronic mail message initiated for the purpose of

---

[2] Section 17529.5, subdivision (a) provides: "It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances: [¶] (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party. [¶] (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information. [¶] (3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."

advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit."

It is clear from the face of the e-mails and the website in this case that Vazirani wanted to publicize his grievances against Aviva to industry professionals. The e-mails do not advertise or promote anything for sale, lease, or other disposition. They criticize Aviva and provide links to a website. The website does not advertise or promote the sale, lease, or other disposition of goods or services either. The website purports to provide information on a variety of claims made against Aviva. The e-mails and the website do not mention any products or services, other than Vazirani's formerly successful affiliation with Aviva. It cannot be said that these e-mails were initiated for the purpose of advertising or promoting the disposition of goods or services. The trial court correctly determined that the e-mails at issue in this case do not fall within the definition of commercial e-mail advertisements for the purposes of section 17529.5, subdivision (a).

## DISPOSITION

The judgment is affirmed. Respondents Anil Vazirani and Vazirani & Associates Financial, LLC, are awarded their costs on appeal.


KRIEGLER, J.


We concur:


TURNER, P. J.                                         O'NEILL, J.[*]

---

[*] Judge of the Ventura County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.